UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>        v.<br><br>SAUD A. ALESSA, *et al.*,<br><br>                              Defendants. | Case No. 3:19-cr-00010-MMD-WGC-1<br><br>ORDER |

## I.     SUMMARY

Defendant Saud A. Alessa was indicted on four tax fraud counts based on the government's theory that he conspired with his supervisor and domestic partner to conceal his income as a manager of door-to-door vacuum salesmen to prevent the Internal Revenue Service ("IRS") from garnishing his wages to pay previously-incurred tax debts. (ECF No. 1.) Before the Court are two motions: (1) Defendant's motion to dismiss Counts Three and Four brought against him as lesser included offenses of Count Two ("Lesser Included Motion") (ECF No. 66);[1] and (2) Defendant's motion to dismiss the entire Indictment because of the government's pre-indictment delay ("Delay Motion") (ECF No. 69).[2] As further explained below, the Court will deny both motions—the Delay Motion primarily because the government's delay in indicting Defendant does not offend the Court's fundamental conception of justice, and the Lesser Included Motion primarily because it is premature.

///

///

---

[1]The Court also reviewed the government's response (ECF No. 83), and Defendant's reply (ECF No. 101).

[2]The Court also reviewed the government's response (ECF No. 81), and Defendant's reply (ECF No. 102).

## II.    BACKGROUND

### A.    Charges in Indictment

The following allegations are adapted from the Indictment. (ECF No. 1.) Defendant's co-defendant Jackie Hayes is his domestic partner—they live together, and have three children together. (*Id.* at 2; *see also* ECF No. 69 at 2.) Defendant's other co-defendant, Jeffrey Bowen, was Defendant's work supervisor, and owns a company that sells vacuum cleaners door-to-door. (ECF No. 1 at 2.) Bowen pays his vacuum salesmen on commission, and also pays a 'distributor profit' on the sales of vacuums to certain salespeople who function as sub-distributors. (*Id.* at 2-3.)

Between 1998 and 2006, Defendant worked for Bowen and earned income, but did not file any income tax returns. (*Id.* at 4.) From October 2006 through April 2007, Defendant filed delinquent tax returns for tax years 1998 through 2005, and a timely tax return for the 2006 tax year. (*Id.*) He calculated he owed taxes of $188,775. (*Id.*) The IRS later notified Defendant he owed an additional $14,604 in taxes for tax year 1999 in February 2008. Further, Defendant did not file a tax return for 2007. (*Id.*) In June 2011, the IRS notified him he owed $2,865 for that tax year. (*Id.*) Defendant did not pay any of the taxes he incurred over these years.

In May 2006, the IRS notified Defendant it was going to attempt to levy his income and assets to recover the back taxes he owed, including any money he made from selling vacuums going forward. (*Id.* at 5.) Defendant nonetheless continued not to file tax returns through 2011. (*Id.*) In November 2012, an IRS representative contacted him to inquire about his unfiled 2008-2011 tax returns, and to attempt to collect payment of the taxes he owed for 1998-2007. (*Id.*) Defendant still did not pay anything. (*Id.*)

Importantly, the Indictment alleges that Defendant worked managing sales teams selling vacuums from 2010-2013. (*Id.*) But after the IRS contacted him in 2012, Defendant filed tax returns for 2008-2011, stating that he earned no income during those years. (*Id.*) The Indictment further alleges Defendant conspired with Bowen and Hayes to make it look like Hayes worked for Bowen during those years, though in fact Defendant worked

2

for Bowen, in order to prevent the IRS from levying Defendant's wages to cover the 1998-2007 back taxes. (*Id.* at 6-7.) During this time, Defendant sold vacuums (*Id.* at 8-9), and used a debit card provided by Bowen in Hayes' name in trust for one of their children to cover expenses such as a meal at a Jack in the Box while on business trips to sell vacuums (*Id.* at 9).

In February 2013, Defendant filed a bankruptcy petition stating he owed the IRS $503,821.67 for tax years 1998-2007. (*Id.* at 5.) He also stated in those proceedings—and otherwise also told the IRS—that he had not worked since 2006, and had been a stay-at-home dad without a credit card since that time. (*Id.* at 10.) Hayes told an IRS officer the same thing in 2013. (*Id.* at 9.) Hayes and Bowen also testified in Defendant's bankruptcy proceedings, and made allegedly false statements to the effect that Defendant had not worked for Bowen since 2006. (*Id.* at 11.)

Also in 2013, Defendant filed a tax return for 2012 stating he had no income, while Hayes and Bowen filed tax documents indicating that Hayes had earned income that Defendant actually earned. (*Id.* at 12.) In 2014, they did essentially the same thing, but for tax year 2013. (*Id.* at 12-13.)

The conduct described above forms the basis of Count One, against all Defendants, for conspiracy to defraud the United States. (*Id.* at 1-13.) Count Two charges Defendant with tax evasion in violation of 26 U.S.C. § 7201 for the actions he took from 2006 through January 2016 to prevent the IRS from levying his income to collect the back taxes he owed for tax years 1998-2007. (*Id.* at 13-15.) Count Three charges Defendant with making and subscribing a false tax return in violation of 26 U.S.C. § 7206(1) for tax year 2012 (the "2012 Return"). (*Id.* at 15-16.) As noted, the Indictment alleges Defendant stated he was unemployed and earned no income in 2012 on the 2012 Return, though he was in fact working as a team leader helping to sell vacuums for Bowen's company. (*Id.*) Count Four charges Defendant with underreporting his income on the tax return he filed for tax year 2013 (the "2013 Return"), also in violation of Section 7206(1). (*Id.* at 17.)
///

1

**B.     Pre-Indictment Activities**

2      Defendant supplies more facts pertinent to his Delay Motion in the form of two

3   declarations and two memoranda prepared by criminal investigators from the Treasury

4   Department. (ECF No. 69 at 3-6; *see also* ECF Nos. 69-1, 69-2, 69-3, 69-4.) Defendant

5   says he tried to resolve his 1998-2011 tax debt by going to an enrolled agent named

6   David Levine in 2012. (ECF No. 69-2 at 2.) Levine told him the first thing he had to do

7   was file tax returns for the years he had not yet filed. (*Id.*) Defendant, with Levine's help,

8   thus filed tax returns for "2007 or 2008 through 2011 or 2012." (*Id.*) Defendant says that

9   Levine asked him how he had been supporting himself without an income since 2006,

10   and Defendant told Levine that Hayes had started working [for Bowen], and was thus

11   handling all of the family and household expenses. (*Id.*) Defendant also told Levine that

12   he helped Hayes with her job. (*Id.*) Defendant says that Levine told him what mattered for

13   tax purposes was whether he was being paid for helping Hayes out, and when Defendant

14   told Levine he was not being paid for his work, they agreed to file 'zero returns' (tax returns

15   reporting no income) for the years since 2006. (*Id.* at 3.) Levine filed these zero returns

16   on Defendant's behalf. (*Id.*)

17      However, Levine experienced a serious medical issue in 2016 where his body went

18   septic and he was placed in a medically-induced coma. (ECF No. 69-1 at 2-3.) This issue

19   caused Levine to lose his memory and rendered him unable to continue running his tax

20   preparation business. (*Id.*) Thus, Levine sold his business to a man named Ken Jacks in

21   2017, and Levine thinks Jacks shredded all of the business records older than five years.

22   (*Id.*) Moreover, while Levine thinks he probably advised Defendant to file zero returns

23   because Defendant was not being paid—because that is consistent with his general

24   practice—he can no longer say for sure what he told Defendant because he lost his

25   memory. (*Id.* at 2-4.) Levine also contacted Jacks to see if he had any documents

26   regarding Defendant, and Jacks told him he had shredded all files regarding Defendant.

27   (*Id.*) In sum, Levine is no longer able to fully corroborate Defendant's representation that

28   he filed zero returns based on Levine's advice.

4

That said, Defendant also filed two memoranda as exhibits to his Delay Motion prepared by Treasury Department criminal investigators following two interviews of Levine regarding Defendant—one in 2014, and one in 2018. (ECF Nos. 69-3, 69-4.) They shed a bit more light on the interactions between Defendant and Levine. The 2014 memo indicates Levine told investigators at the time that he prepared Defendant's zero returns based on information provided orally by Defendant. (ECF No. 69-3 at 2-3.) Levine told the investigators that Defendant told him he had not earned any income since 2006, and Levine verified this by checking electronic IRS records to confirm Defendant did not appear to have earned any income during the pertinent time period. (*Id.* at 2.) Thus, having no reason to doubt Defendant's story, Levine prepared, or had one of his subordinates prepare and file, Defendant's zero returns. (*Id.*) The memo also included the following note:

> Levine reviewed his computer system for records related to AL-ESSA Levine could not locate a Form 433-A prepared for AL-ESSA but he may have lost the computer record. Levine is not sure if he prepared a 433-A for AL-ESSA.

(*Id.* at 3.)

The 2018 memo is largely confirmatory. (ECF No. 69-4.) When presented with them in 2018, Levine confirmed he filed Defendant's 2008-2011 zero returns based on what Defendant told him, and after verifying that no 1009's or W-2's had been filed for Defendant for those years. (*Id.* at 2-3.) Neither memo mentions Levine advising Defendant to file zero returns even though he helped Hayes with her work because Defendant was not being paid directly for that work.

## III. DISCUSSION

The Court first addresses Defendant's Delay Motion, and then addresses the Lesser Included Motion.

### A. Delay Motion

Defendant argues the Court should dismiss the entire Indictment against him because the conduct he is accused of ended in 2013, and was first investigated in detail in 2014, but the government did not indict until 2019. (ECF No. 69 at 1-2.) Legally,

5

1    Defendant argues the government violated his Fifth Amendment due process rights in
2    taking so long to indict him. (*Id.* at 6-7.) Defendant more specifically argues he has been
3    prejudiced by unjustified pre-indictment delay because Levine lost his memory in 2016,
4    and his business records were destroyed when he sold his business as a result, which
5    has significantly reduced the efficacy of Defendant's defense of good faith reliance on
6    professional advice. (*Id.* at 7-12.) The government counters that the Court should deny
7    the Delay Motion because Plaintiff fails to show "actual, non-speculative prejudice from
8    the delay[,]" and, alternatively, any delay balanced against the government's proffered
9    reasons for it does not offend fundamental conceptions of justice. (ECF No. 81 at 2.) The
10   Court agrees with the government.

11       While delay between the commission of a crime and an indictment is generally only
12   limited by the applicable statute of limitations, the Fifth Amendment also guarantees
13   defendants will not be denied due process by extensive pre-indictment delay. *See U.S.*
14   *v. Corona-Verbera*, 509 F.3d 1105, 1112 (9th Cir. 2007). To "succeed on his claim that
15   he was denied due process because of pre-indictment delay[,]" a defendant must "satisfy
16   both prongs of a two-part test[.]" *Id.* "First, he must prove 'actual, non-speculative
17   prejudice from the delay.'" *Id.* (citation omitted). "Second, the length of the delay is
18   weighed against the reasons for the delay, and [the defendant] must show that the delay
19   offends those fundamental conceptions of justice which lie at the base of our civil and
20   political institutions." *Id.* (citations and internal quotation marks omitted). The Court only
21   moves on to the second prong if the first is satisfied, and the first, 'actual prejudice' prong
22   is a "'heavy burden' that is rarely met." *Id.*

23       The Court begins its analysis by acknowledging the heavy burden Defendant must
24   carry to prevail on his Delay Motion. *See id.* To illustrate this point, no court held a motion
25   like the Delay Motion should actually be granted in any of the cases that specifically deal
26   with pre-indictment delay Defendant relies on in his Delay Motion. (ECF No. 69 at 6-7
27   (relying on *U.S. v. Marion*, 404 U.S. 307, 322, 324 (1971); *U.S. v. Talbot*, 51 F.3d 183,
28   185 (9th Cir. 1995); *U.S. v. Doe*, 149 F.3d 945, 948 (9th Cir. 1998); *U.S. v. Pallan*, 571

1    F.2d 497, 500 (9th Cir. 1978); *U.S. v. Sherlock*, 962 F.2d 1349, 1353-54 (9th Cir. 1989)).)

2    *But see Marion*, 404 U.S. at 325 (concluding the defendants had not shown actual

3    prejudice); *Talbot*, 51 F.3d at 185-86 (same); *Doe*, 149 F.3d at 947-49 (same); *Pallan*,

4    571 F.2d at 499-501 (same); *Sherlock*, 962 at F.2d at 1354-55 (same). Thus, the caselaw

5    Defendant relies on does not favor his position, and instead illustrates his heavy burden.

6          On the first prong, Defendant has not shown "'actual, non-speculative prejudice

7    from the delay," *Corona-Verbera*, 509 F.3d at 1112, because Defendant's claim of

8    prejudice due to Levine's lost testimony is too speculative. (ECF No. 81 at 8-11 (making

9    this argument).) Defendant's claim of prejudice relies on his argument that Levine would

10   testify he had advised Defendant that Defendant did not need to report any income

11   generated from him helping Hayes because Defendant was not being paid for that help.

12   (ECF No. 69 at 9-11.) And as Defendant points out, it is now more difficult for him to

13   convincingly make this argument because Levine has lost his memory. (*Id.*; *see also* ECF

14   No. 102 at 5-7.) However, Defendant has not presented any evidence beyond his own

15   declaration that Levine would have provided the testimony Defendant wants if the

16   Indictment had occurred sooner—before Levine lost his memory. (ECF Nos. 69-1

17   (explaining how Levine thinks he would testify based on his general practices), 69-2

18   (stating that Levine gave him such advice).)

19         To the contrary, the evidence Defendant presented suggests by omission, but

20   does not prove, Levine would not have offered such testimony. (ECF No. 69-3.) More

21   specifically, the 2014 memo contains no note to the effect that Levine advised Defendant

22   he did not have to report any income even though Defendant told him Defendant helped

23   Hayes with her work for Bowen. (*Id.*) The Court would expect the 2014 memo to contain

24   such a note—if such an exchange occurred—because the memo otherwise discusses

25   Defendant's explanation that Hayes had started working once he stopped working. (*Id.*)

26   And drawing the reasonable inference that the Treasury Department investigators' theory

27   at the time lined up with the government's theory outlined in the Indictment, the

28   investigators would have asked about it. The fact the 2014 memo omits any information

1    about what advice Levine gave Defendant tends to undermine Levine's guess that he

2    gave such advice included in his recent declaration. (ECF Nos. 69-1, 69-3.)

3         As to Defendant's related argument he was prejudiced because Levine selling his

4    business led to the destruction of relevant records (ECF No. 69 at 11-12), the Court also

5    agrees with the government this argument is unsupported by the facts as they appear at

6    this point in this case (ECF No. 81 at 6-8). Levine told the Treasury Department

7    investigators in 2014—before he had his medical emergency—that he did not have a

8    Form 433-A for Defendant, and may have lost it. (ECF No. 69-3 at 3.) The government

9    further points out that the investigators followed their 2014 interview of Levine with a

10   summons to produce all documents he had regarding Defendant (ECF No. 81-1), but

11   Levine did not produce any documents regarding Defendant in response (ECF No. 81 at

12   6-7). This exchange also occurred before Levine's medical issue. And as all of this

13   evidence suggests Levine did not have any relevant documents regarding Defendant in

14   2014, the Court finds Defendant's argument that the government's delay was prejudicial

15   because Levine's medical issue led to lost documents ultimately unpersuasive.

16        The Court therefore finds that any prejudice Defendant has suffered through the

17   loss of Levine's testimony or documents is too speculative to weigh in favor of granting

18   the motion. *See Corona-Verbera*, 509 F.3d at 1112 (explaining both this is the first prong,

19   and that the Court need not even move past the first prong if it is not satisfied); *see also*

20   *Pallan*, 571 F.2d at 501 ("While this testimony may have been of some benefit to [the

21   defendant], he has not made a non-speculative demonstration that its loss has actually

22   impaired his ability meaningfully to defend himself.").

23        Second, and alternatively—even if Defendant had shown the requisite prejudice—

24   the Court finds the delay in this case does not offend its conception of justice after

25   weighing the length of the delay against the government's proffered reasons for the delay.

26   *See Corona-Verbera*, 509 F.3d at 1112 (explaining this is the second prong). Defendant

27   argues the government delayed from its initial investigation in 2014 until 2019—a delay

28   of about five years. (ECF No. 69 at 4-5.) But this is not such a long delay in the context

8

of even the analogous cases Defendant relies on. *See, e.g.*, *Pallan*, 571 F.2d 497 (finding no due process violation where there was a five year delay before the indictment); *Doe*, 149 F.3d 945 (same as to four year delay). Moreover, as to the reasons for the delay, the government basically explains that tax cases take time to work up, and this case was passed from investigators, to one prosecutor to another, before eventually being given to the prosecutors now handling the case in 2018, who did a confirmatory investigation and then moved to indict the case within about a year. (ECF No. 81 at 16-17.) This explanation does not evidence the kind of government culpability normally required for a defendant to establish a due process violation based on the government's pre-indictment delay. *See U.S. v. Moran*, 759 F.2d 777, 783 (9th Cir. 1985) ("our cases clearly require some showing of governmental culpability to prove a deprivation of due process"); *see also id.* (finding no due process violation); *Pallan*, 571 F.2d 497 (finding no due process violation even where the federal prosecutor waited for a state prosecution to conclude before indicting the case, evidencing a tactical reason for the delay suggesting a level of government culpability not present here). Thus, the Court alternatively finds Defendant's Delay Motion fails to persuade at the second prong.

### B.   Lesser Included Motion

Defendant argues Counts Three and Four of the Indictment, for filing false tax returns, should be dismissed as lesser included offenses of Count Two, for tax evasion. (ECF No. 66.) Defendant more specifically argues that Counts Three and Four are lesser included offenses because they are based on acts also listed as acts pertinent to the tax evasion allegations in Count Two. (*Id.* at 2.) Because a rational jury could not "acquit the defendant of the greater offense but convict on the lesser offense[,]" Defendant argues, the Court should dismiss Counts Three and Four. (*Id.*) The government counters in pertinent part that Defendant is wrong, as a matter of law—that the Section 7206(1) charges in Counts Three and Four are not lesser included offenses of tax evasion under Section 7201. (ECF No. 83 at 2.) The government further counters that Defendant relies on legal principles and analysis that have been superseded by other principles and

9

1  analysis discussed in subsequent opinions of the Supreme Court and Ninth Circuit Court

2  of Appeals. (*Id.*) When the Court applies the governing law to the facts of this case, the

3  government argues, the Lesser Included Motion must be denied. (*Id.* at 2-3.)

4        But as a threshold matter, the government also notes the argument Defendant

5  makes in the Lesser Included Motion is normally raised either at the conclusion of

6  evidence, or post-trial—regarding a request for a lesser included offense jury instruction.

7  (ECF No. 83 at 15-16.) Moreover, the government argues, it would be without Ninth Circuit

8  precedent for the Court to decide the Lesser Included Motion now, dismissing charges

9  from an indictment. (*Id.*) In his reply, Defendant "recognizes pre-trial challenges to lesser

10 included offenses may be premature in some cases, [but] maintains a pre-trial challenge

11 is appropriate when it's clear from the indictment the trial evidence won't rationally support

12 a conviction on a lesser offense but an acquittal on an inclusive offense." (ECF No. 101

13 at 14-15.) Defendant goes on to argue that sound policy supports him bringing the motion

14 now—primarily to avoid giving the jury the impression that Defendant engaged in a

15 greater amount of criminal conduct than the Indictment actually supports. (*Id.* at 15.) For

16 this argument, Defendant relies on caselaw from the analogous context of a challenge to

17 multiplicitous charges. (*Id.*) Defendant proffers no caselaw to counter the government's

18 assertion that it would be unprecedented for the Court to decide the Lesser Included

19 Motion now—and the Court was unable to locate any. (*Id.*)

20       This gives the Court pause. Moreover, between the parties' arguments and the

21 Court's own research, it appears the Ninth Circuit has never definitively resolved the

22 question of whether, as a matter of law, Section 7206(1) is a lesser included offense of

23 Section 7201 since the Supreme Court decided *Schmuck v. United States*, 489 U.S. 705

24 (1989). (ECF Nos. 66, 83, 101.) In *Schmuck*, the Supreme Court clarified that courts must

25 use the "elements" test in determining whether one offense is a lesser included offense

26 of another. *See* 489 U.S. at 715-21. "An offense is a lesser included offense of the offense

27 charged [using this test where] 'the elements of the lesser offense are a subset of the

28 elements of the charged offense.'" *U.S. v. Nichols*, 9 F.3d 1420, 1421 (9th Cir. 1993)

1   (citing *Schmuck*, 489 U.S. at 716). And this "elements" test is the first of two steps in a

2   two-part test used to determine whether to give a lesser included offense instruction to

3   the jury. *See Nichols*, 9 F.3d at 1421-22. Specifically, "[a] defendant is entitled to an

4   instruction on a lesser included offense if: (1) 'the offense on which the instruction is

5   sought is a lesser included offense of the offense charged' and (2) 'the jury rationally

6   could conclude that the defendant was guilty of the lesser included offense but not the

7   greater.'" *Id.* at 1421 (citation omitted).

8       In his Lesser Included Motion, Defendant primarily focuses on the second prong

9   of this test. (ECF No. 66.) However, as the government argues in response (ECF No. 83),

10  and as mentioned above, Defendant glosses over the fact that he is asking the Court to

11  resolve an unresolved question of law earlier in the life of this case than such a question

12  has apparently ever been resolved by a court in the Ninth Circuit. This gives the Court

13  further pause. And beyond these two concerns, Defendant also makes clear in his reply

14  that accepting his argument requires the Court to draw inferences about what the

15  evidence will show at trial based solely on the allegations in the Indictment. (ECF No. 101

16  at 14-15.) Defendant is therefore asking the Court to step over at least three different

17  delicate lines in an attempt to trim the Indictment issued against him before trial.

18      Defendant concludes the Lesser Included Motion simply, but, again without any

19  governing law to support his request. (*Id.* at 15.) "The Court should therefore consider this

20  challenge now." (*Id.*) But this sentence indicates nothing more than Defendant's

21  preference. And while that preference is perfectly understandable, the Court declines

22  Defendant's invitation to make new law before hearing the actual presentation of the

23  evidence at trial. Having that evidence will lead to a better-informed decision. The Court

24  will thus deny Defendant's Lesser Included Motion as premature, without prejudice to

25  refiling as appropriately updated no sooner than the conclusion of evidence. *See Nichols*,

26  9 F.3d at 1421 (reviewing the district court's "refusal to give a lesser included offense

27  instruction" to the jury); *U.S. v. Boone*, 951 F.2d 1526, 1541-42 (9th Cir. 1991) (same);

28  *U.S. v. Fisher*, 607 F. App'x 645, 646 (9th Cir. 2015) (same).

IV.     **CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant's motion to dismiss counts three and four (ECF No. 66) is denied without prejudice as explained herein.

It is further ordered that Defendant's motion to dismiss for pre-indictment delay (ECF No. 69) is denied.

DATED THIS 28th day of July 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE